**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH HASSON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Case No. 2:22-cv-01246-RJC |
| v. | |
| FULLSTORY, INC., | |
| Defendant. | |

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 3

I.      FULLSTORY IS NOT SUBJECT TO PERSONAL JURISDICTION IN
        PENNSYLVANIA. ................................................................................................... 3

        A.      Legal Standard .............................................................................................. 4

        B.      There Are No Relevant Contacts in Pennsylvania. ...................................... 5

        C.      The Exercise of Jurisdiction Would Be Unreasonable. ............................... 9

II.     PLAINTIFF FAILS TO STATE ANY CLAIM. .................................................... 9

        A.      The Pennsylvania Wiretap Act Claim Should Be Dismissed. ................... 10

                1.      Plaintiff's Communications Were Not "Intercepted." .................... 10

                2.      Plaintiff Consented to the Alleged Data Collection. ..................... 16

        B.      The Intrusion Upon Seclusion Claim Should Be Dismissed. ..................... 18

CONCLUSION ..................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aldossari ex rel. Aldossari v. Ripp*,
   49 F.4th 236 (3d Cir. 2022) ...................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................7, 10

*Beck v. Ashley Distrib. Servs., Ltd.*,
   2012 WL 604189 (W.D. Pa. Feb. 24, 2012) ...............................................8

*Boring v. Google, Inc.*,
   598 F. Supp. 2d 695 (W.D. Pa. 2009)......................................................20

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
   137 S. Ct. 1773 (2017).........................................................................9

*Brooks Grp. & Assocs., Inc. v. LeVigne*,
   2014 WL 1490529 (E.D. Pa. Apr. 15, 2014) ...........................................18

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006)................................................................10

*Calder v. Jones*,
   465 U.S. 783 (1984)................................................................... *passim*

*Cardoso v. Whirlpool Corp.*,
   2021 WL 2820822 (S.D. Fla. July 6, 2021)..............................................12

*Chavez v. Dole Food Co., Inc.*,
   836 F.3d 205 (3d Cir. 2016)..................................................................4

*Chicarella v. Passant*,
   494 A.2d 1109 (Pa. Super. 1985)..........................................................20

*Commonwealth v. Byrd*,
   235 A.3d 311 (Pa. 2020) ........................................................16, 17, 18

*Commonwealth v. Cruttenden*,
   58 A.3d 95 (Pa. 2012) .......................................................................15

*Commonwealth v. Diego*,
   119 A.3d 370 (Pa. Super. 2015).............................................12, 15, 17

*Commonwealth v. Gamby*,
   283 A.3d 298 (Pa. 2022) ..................................................................................11, 12

*Commonwealth v. Hart*,
   28 A.3d 898 (Pa. 2011) ..........................................................................................11

*Commonwealth v. Lassiter*,
   722 A.2d 657 (Pa. 1998) ........................................................................................13

*Commonwealth v. Proetto*,
   771 A.2d 823 (Pa. Super. 2001) .......................................................................15, 18

*Commonwealth v. Smith*,
   136 A.3d 170 (Pa. Super. 2016) .............................................................................12

*Connelly v. Steel Valley Sch. Dist.*,
   706 F.3d 209 (3d Cir. 2013) ...................................................................................20

*Connor v. Whirlpool Corp.*,
   2021 WL 3076477 (S.D. Fla. July 6, 2021) ...........................................................12

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................................................4

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
   948 F.3d 124 (3d Cir. 2020) .....................................................................................4

*In re DoubleClick Inc. Priv. Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................................................................16

*Fraser v. Nationwide Mut. Ins. Co.*,
   352 F.3d 107 (3d Cir. 2003) ...................................................................................13

*Goldstein v. Costco Wholesale Corp.*,
   559 F. Supp. 3d 1318 (S.D. Fla. 2021) ...................................................................14

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) ...................................................................................13

*Hartford Steam Boiler Inspection v. Int'l Glass Prods., LLC*,
   2016 WL 5468111 (W.D. Pa. Sep. 29, 2016) .........................................................13

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) ......................................................................................8

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998) ........................................................................ *passim*

*Jacome v. Spirit Airlines Inc.*,
    2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ......................................................12, 14, 17

*Kennedy v. Help at Home, LLC*,
    731 F. App'x 105 (3d Cir. 2018) ......................................................................................20

*Kline v. Sec. Guards, Inc.*,
    386 F.3d 246 (3d Cir. 2004) .............................................................................................19

*Kyko Glob., Inc. v. Bhongir*,
    807 F. App'x 148 (3d Cir. 2020) .......................................................................................4

*LaSala v. Marfin Popular Bank Pub. Co.*,
    410 F. App'x 474 (3d Cir. 2011) .......................................................................................6

*Lloyd v. The Retail Equation, Inc.*,
    2022 WL 18024208 (D.N.J. Dec. 29, 2022) ......................................................................9

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007) ...............................................................................................7

*Maser v. Deeble*,
    2017 WL 930795 (W.D. Pa. Mar. 9, 2017) ...................................................................4, 5

*Mason v. Mach. Zone, Inc.*,
    140 F. Supp. 3d 457 (D. Md. 2015) ................................................................................11

*Massie v. Gen. Motors Co.*,
    2021 WL 2142728 (E.D. Cal. May 26, 2021) ................................................................4, 6

*Metcalfe v. Renaissance Marine, Inc.*,
    566 F.3d 324 (3d Cir. 2009) ...............................................................................................4

*Nagy v. Bell Tel. Co. of Pa.*,
    436 A.2d 701 (Pa. Super. 1981) ......................................................................................20

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) .......................................................................................16, 18

*O'Donnell v. United States*,
    891 F.2d 1079 (3d Cir. 1989) ..........................................................................................19

*Patchen v. McGuire*,
    2012 WL 4473233 (E.D. Pa. Sept. 27, 2012) ...................................................................8

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*,
    149 F.3d 197 (3d Cir. 1998) ...............................................................................................9

*Popa v. Harriet Carter Gifts, Inc.*,
    426 F. Supp. 3d 108 (W.D. Pa. 2019) ............................................................12, 20

*Popa v. Harriet Carter Gifts, Inc.*,
    52 F.4th 121 (3d Cir. 2022) ...........................................................12, 15, 16, 18

*Potter v. Havlicek*,
    2008 WL 2556723 (S.D. Ohio June 23, 2008) ........................................................12

*Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*,
    809 A.2d 243 (Pa. 2002) ...........................................................................20

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001) .........................................................................7

*Ruder v. Pequea Valley Sch. Dist.*,
    790 F. Supp. 2d 377 (E.D. Pa. 2011) ...............................................................19

*Sacco v. Mouseflow, Inc.*,
    2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ............................................3, 5, 6, 7

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ......................................................... *passim*

*Schneider v. SunTrust Mortg., Inc.*,
    2011 WL 2600720 (D. Minn. June 30, 2011) .........................................................14

*Scott v. Lackey*,
    587 F. App'x 712 (3d Cir. 2014) ....................................................................6

*Shuker v. Smith & Nephew, PLC*,
    885 F.3d 760 (3d Cir. 2018) .........................................................................8

*Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*,
    5 F.3d 28 (3d Cir. 1993) ...........................................................................8

*United States v. Ackies*,
    918 F.3d 190 (1st Cir. 2019) .......................................................................12

*United States v. Bowers*,
    2021 WL 2882438 (W.D. Pa. July 8, 2021) ..........................................................19

*Walden v. Fiore*,
    571 U.S. 277 (2014) .................................................................................6

*Walsh v. Krantz*,
    386 F. App'x 334 (3d Cir. 2010) ...................................................................15

*Warren Gen. Hosp. v. Amgen Inc.*,
   643 F.3d 77 (3d Cir. 2011)................................................................................7

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) .........................................................14

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .......................................................................13

**Statutes**

18 Pa. C.S. § 5702...........................................................................10, 11, 13, 14

18 Pa. C.S. § 5703.................................................................................13, 15

18 Pa. C.S. § 5704.................................................................................10, 16

18 Pa. C.S. § 5725........................................................................... *passim*

42 Pa. C.S. § 5322.......................................................................................4

18 U.S.C. § 2510.................................................................................13, 15

## INTRODUCTION

This lawsuit is one of many copycat lawsuits challenging the routine use of software-based services to help companies improve the design and user experience on their websites.  One such software service is provided by FullStory, a Georgia company, to Mattress Firm, a Texas company. Mattress Firm uses FullStory's software to collect information about what visitors are doing on its website, so that Mattress Firm can enhance the online user experience.  For example, FullStory's software enables Mattress Firm to identify, troubleshoot, and remediate bugs on its website. Plaintiff Kenneth Hasson, however, claims that this beneficial software service constitutes "wiretapping" under Pennsylvania law.  After FullStory filed a motion to dismiss Plaintiff's initial Complaint, he filed an Amended Complaint.  But his amended pleading fares no better than the original.  For multiple reasons, the Court should dismiss the Amended Complaint.

*First*, the Court has no personal jurisdiction over FullStory because all of its alleged conduct was aimed *outside* of Pennsylvania.  That Plaintiff is a Pennsylvania resident fails to support the exercise of personal jurisdiction against a foreign company when the alleged claim does not arise out of or relate to any in-state contacts.  Another court dismissed wiretapping claims in California against FullStory for similar reasons.  *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 513 (C.D. Cal. 2021) (no personal jurisdiction over FullStory in California).  This Court should reach the same result.

*Second*, the Amended Complaint fails to state a viable claim under the Pennsylvania Wiretap Act.  As an initial matter, Plaintiff fails to allege use of a "device," as required under the statute, which encompasses tangible equipment, not intangible software.  Further, Plaintiff fails to allege interception of the "contents" of his communications, which refers to the "substance, purport, or meaning" of a communication.  Other courts presented with similar claims have held that mouse clicks, keystrokes, and general user movements on a website do not constitute the

- 1 -

"contents" of a communication under wiretapping statutes.  Lastly, Plaintiff consented to this service because Mattress Firm discloses its data collection and use practices in a pop-up banner and privacy policy on its website, of which this Court should take judicial notice.

*Third*, Plaintiff also fails to state a claim for the common-law tort of intrusion upon seclusion.  To start, the Amended Complaint alleges no facts showing that FullStory believed it lacked legal permission to provide this software service to Mattress Firm.  Plaintiff's omission is fatal because any liability for intrusion requires proof of intent.  Moreover, Plaintiff's allegations, even if true, fall well short of demonstrating that the purported intrusion is "highly offensive," another required element of this claim.  To the contrary, Plaintiff acknowledges that FullStory's software enables clients like Mattress Firm to improve their customers' browsing experience on its website.  This is beneficial.

For these and the additional reasons set forth below, this Court should dismiss the Amended Complaint with prejudice.

## BACKGROUND[1]

***Mattress Firm's Alleged Use of FullStory's Software.***  FullStory, a Georgia company, provides a software service to help Mattress Firm, a Texas company, improve the design of and user experience on its website.  *See* ECF No. 23 ¶¶ 6, 21, 69; Request for Judicial Notice ("RJN") Ex. 5.  Mattress Firm allegedly embedded FullStory's software code on its website (mattressfirm.com) to learn about how visitors use its website.  *Id.* ¶¶ 42, 69.  Mattress Firm allegedly uses a session replay feature that provides a "reproduction of a user's online experience" to understand how visitors interact with its website.  *Id.* ¶ 41.

---

[1] Citations to the Amended Complaint do not constitute acceptance by FullStory of the truth of any of Plaintiff's allegations in the Amended Complaint.

*Plaintiff's Alleged Visit to Mattress Firm's Website.*   Plaintiff Kenneth Hasson is a Pennsylvania resident who alleges having visited Mattress Firm's website from his computer.  *Id.* ¶ 67.  Plaintiff alleges that "the FullStory Script intercepted" his movements on Mattress Firm's website, including "mouse movements," "clicks," "URLs of web pages visited," and "keystrokes," as well as information allegedly entered by Plaintiff ("name, address, email address, and payment information").  ECF No. 23 ¶¶ 1, 71, 76, 79.  Plaintiff does not allege that FullStory's software did anything with this data other than make it available to Mattress Firm.

*This Lawsuit.*   In August 2022, Plaintiff filed this putative class-action lawsuit alleging that FullStory "wiretapped" his communications with Mattress Firm when he visited the Mattress Firm website.  *Id.* ¶¶ 1, 109.  After FullStory filed a motion to dismiss, Plaintiff filed an Amended Complaint.  The Amended Complaint continues to assert that FullStory's software service violates the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Pennsylvania Wiretap Act" or "Wiretap Act") (*id.* ¶¶ 97–112) and constitutes an unlawful intrusion upon seclusion under Pennsylvania common law (*id.* ¶¶ 113–26).  Plaintiff seeks to assert these claims on behalf of a putative class of persons in Pennsylvania "whose Website Communications were captured in Pennsylvania through the use of FullStory software."  *Id.* ¶ 87.

## ARGUMENT

## I.   FULLSTORY IS NOT SUBJECT TO PERSONAL JURISDICTION IN PENNSYLVANIA.

The Amended Complaint should be dismissed because the Court lacks personal jurisdiction over FullStory in Pennsylvania.  Courts have previously dismissed FullStory and other session replay providers for lack of personal jurisdiction in states where the only contact was the plaintiff's residence.  *Saleh*, 562 F. Supp. 3d at 513 (no personal jurisdiction over FullStory); *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *4 (E.D. Cal. Sept. 30, 2022) (no personal jurisdiction over

another session replay provider); *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *8 (E.D. Cal.

May 26, 2021) (same).  The same result is warranted here.

### A.     Legal Standard

Plaintiff bears the burden of establishing personal jurisdiction.  *Danziger & De Llano, LLP*

*v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020).  Where, as here, the Court is sitting

in diversity, the Court applies the law of the forum state—here, Pennsylvania.  *Metcalfe v.*

*Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  Pennsylvania's long-arm statute

extends to the limit of federal due process.  42 Pa. C.S. § 5322(b).  Accordingly, Plaintiff must

demonstrate that: (1) the defendant has constitutionally sufficient "minimum contacts" with the

forum, and (2) the exercise of jurisdiction would comport with "traditional notions of fair play and

substantial justice."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259–60 (3d Cir. 1998).

The Amended Complaint does not allege FullStory is subject to general jurisdiction in

Pennsylvania.  Nor could it do so, because FullStory is a Georgia company incorporated in

Delaware.  ECF No. 23 ¶ 6.[2]  Plaintiff instead argues that this Court has specific jurisdiction over

this action.  ECF No. 23 ¶ 8.  In the context of specific jurisdiction, the "minimum contacts"

determination is analyzed differently depending on the type of claim asserted.  *See Maser v.*

*Deeble*, 2017 WL 930795, at *4 (W.D. Pa. Mar. 9, 2017).  The three-part "effects" test set forth in

*Calder v. Jones*, 465 U.S. 783 (1984), applies to intentional tort claims.  *Kyko Glob., Inc. v.*

*Bhongir*, 807 F. App'x 148, 152 (3d Cir. 2020).  Because Plaintiff's wiretapping and intrusion

upon seclusion claims are intentional torts (*see* ECF No. 23 ¶¶ 110, 119), the *Calder* test governs.

---

[2] The Amended Complaint also does not allege any facts to show this is an "exceptional case" for
exercising general jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).  The Third
Circuit has stated it "is incredibly difficult to establish" this narrow exception.  *Chavez v. Dole*
*Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016).

- 4 -

*See, e.g.*, *Maser*, 2017 WL 930795, at *4 (applying *Calder* to intrusion upon seclusion claim); *Sacco*, 2022 WL 4663361, at *4 (applying *Calder* to California wiretap claim); *Saleh*, 562 F. Supp. 3d at 511 (same).  As demonstrated below, specific jurisdiction does not attach to FullStory.

**B.    There Are No Relevant Contacts in Pennsylvania.**

The Amended Complaint is devoid of allegations demonstrating the requisite minimum contacts under the *Calder* test.  Plaintiff must plead that (1) FullStory committed an "intentional tort," (2) Plaintiff "felt the brunt of the harm" in Pennsylvania, and (3) FullStory "expressly aimed" its allegedly tortious conduct at Pennsylvania.  *IMO Indus.*, 155 F.3d at 265–66.  To satisfy this third element, in particular, Plaintiff must (i) "point to *specific activity* indicating that" FullStory "expressly aimed" its conduct at Pennsylvania and (ii) show FullStory "*knew*" that Plaintiff "would suffer the brunt of the harm" in Pennsylvania.  *Id.* at 266 (emphasis added).  Plaintiff's Amended Complaint fails to satisfy this standard, which is fatal to the assertion of personal jurisdiction.

Another court applying *Calder* similarly dismissed FullStory for lack of personal jurisdiction in a wiretapping lawsuit in California.  *Saleh*, 562 F. Supp. 3d at 509.  In *Saleh*, as here, the plaintiff alleged that FullStory's session replay software "wiretapp[ed]" his communications on a retailer's website.  *Id.*  The *Saleh* court held that there was no personal jurisdiction over FullStory because the plaintiff had pled no facts demonstrating that FullStory "expressly aimed" its software service at California.  *Id.* at 515.  The court held it was not enough to allege that Nike's website was "accessible to California residents" or that "it was foreseeable FullStory's services would be used to record California users," because such allegations arose from actions by the website owner (in that case, Nike), not FullStory.  *Id.* at 514–15.

Applying similar reasoning, courts have dismissed other session replay providers for lack of personal jurisdiction.  For example, in *Sacco v. Mouseflow, Inc.*, the court held that the "expressly aimed" element was not met because the alleged collection was not "'tethered' in any

way to the forum state;" it "would have occurred no matter the state Plaintiff was in." 2022 WL 4663361, at *5. Similarly, in *Massie v. Gen. Motors Co.*, the court dismissed a session replay provider for lack of personal jurisdiction because the "alleged contractual relationship with, and provision of software to [the website operator]" was aimed "outside of [the forum], at [the website operator] and its websites." 2021 WL 2142728, at *8.

Plaintiff's Amended Complaint fares no better than the pleadings in *Saleh*, *Sacco*, and *Massie*. He does not "point to specific activity indicating that" FullStory's service for Mattress Firm is "expressly aimed" at Pennsylvania. *IMO Indus.*, 155 F.3d at 266. Rather, FullStory's software service is provided to Mattress Firm, a Texas company, and its website, which is available nationwide. *See* ECF No. 23 ¶¶ 41–42, 76–77; RJN Ex. 5. That Plaintiff resides in Pennsylvania and allegedly experienced harm in the state (ECF No. 23 ¶ 67) is insufficient as a matter of law. The alleged harm "would have occurred no matter the state Plaintiff was in." *Sacco*, 2022 WL 4663361, at *5. His alleged decision to access the website in Pennsylvania is precisely the sort of "unilateral activity of a plaintiff" that the United States Supreme Court has held "cannot satisfy the requirement of contact with the forum State." *Walden v. Fiore*, 571 U.S. 277, 286, 290–91 (2014) (no jurisdiction where plaintiffs would have experienced the injury "wherever else they might have traveled and found themselves"); *accord Scott v. Lackey*, 587 F. App'x 712, 716 (3d Cir. 2014) (noting that, "[e]ven in the context of an intentional tort, . . . the 'unilateral activity of a plaintiff' do[es] not establish a basis for personal jurisdiction").

It also makes no difference that FullStory allegedly "knew" data of Pennsylvania residents would be collected (ECF No. 23 ¶¶ 8, 56–58), because "the foreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under *Calder*." *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 477 (3d Cir. 2011) (citing *Marten v. Godwin*, 499 F.3d

290, 297 (3d Cir. 2007)); *accord Saleh*, 562 F. Supp. 3d at 515 (foreseeability that FullStory's software would collect data of California users is insufficient basis to hale it into the forum).

Plaintiff also fails to allege facts demonstrating that FullStory "knew" Plaintiff "would suffer the brunt of the harm" in Pennsylvania. *IMO Indus.*, 155 F.3d at 266. The Amended Complaint contains no allegations that FullStory was even aware that Plaintiff resided in Pennsylvania. "Given that the website was . . . accessible worldwide, there is no basis to conclude that" FullStory "kn[ew] that [alleged] harm" to Plaintiff "was likely to be caused there." *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (no knowledge of harm in Pennsylvania where website at issue was "accessible worldwide"); *see also Sacco*, 2022 WL 4663361, at *5 n.2 (no knowledge of harm in California where "alleged harm would have occurred regardless of the location [from which] Plaintiff visited the . . . website").

Because Plaintiff fails to satisfy the "express aiming" element under *Calder*, this Court need not consider the other two elements of the *Calder* test. *See Marten*, 499 F.3d at 297 (only if expressly-aimed element is met "need we consider the other two elements"). Even if this Court considers the remaining elements, Plaintiff's conclusory allegations of FullStory's intent (ECF No. 23 ¶¶ 110, 119) are not sufficient to plead the "intentional tort" element. *See Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) ("After *Twombly* and [*Iqbal*], 'conclusory or bare-bones allegations will no longer survive a motion to dismiss'"). This is especially so where, as here, any basis for personal jurisdiction over FullStory is *contradicted* by the allegation that Mattress Firm "installs the FullStory Script" in its website code (*see id.* ¶ 42), thus "making [Mattress Firm] the only entity *using* the alleged wiretapping technology." *Sacco*, 2022 WL 4663361 at *4 (emphasis in original) (intentionality element of *Calder* not satisfied where the website operator, not the session replay vendor, allegedly installed the session replay software).

Although the *Calder* "effects" test applies for the reasons explained above, FullStory's dismissal on jurisdictional grounds is no less warranted under the alternative test for non-intentional torts requiring that (1) the defendant "purposefully availed itself of the privilege of conducting its activities within the forum [state]," and (2) the plaintiff's claim "is related to or arises out of" the defendant's forum contacts. *IMO Indus.*, 155 F.3d at 259 & n.3. This test is not satisfied here for the same reasons discussed above: the alleged activities giving rise to Plaintiff's claims were aimed outside of Pennsylvania. *See Patchen v. McGuire*, 2012 WL 4473233, at *6 n.10 (E.D. Pa. Sept. 27, 2012) ("[G]enerally a plaintiff who cannot establish sufficient contacts under the effects test will also fail under the standard test.").

Plaintiff's bare allegation, made on "information and belief," that some *other* companies with which FullStory "contracts" may reside in Pennsylvania (ECF No. 23 ¶ 40) is "insufficient" to establish purposeful availment, even if the alternative test applied. *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022) (no jurisdiction based on "entering into a contract with a resident of a state"); *see Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) (no jurisdiction based on contract with third-party forum resident); *Beck v. Ashley Distrib. Servs., Ltd.*, 2012 WL 604189, at *1 (W.D. Pa. Feb. 24, 2012) (no jurisdiction based on "vague assertions, made only on information and belief"). At most, such an allegation shows "efforts to exploit a national market that necessarily included Pennsylvania," which is "insufficient" to support jurisdiction. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018).

Any contracts with other companies, in any event, have no connection—let alone the "strong connection" required to satisfy the relatedness requirement—to the alleged wiretapping of Plaintiff's communications with Mattress Firm. *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021). There are no allegations that FullStory contracted with Mattress Firm in Pennsylvania, nor

that Plaintiff's communications with any Pennsylvania company were wiretapped.  *See Bristol-*
*Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (no jurisdiction based on
defendant's contract with a forum distributor that was not alleged to have distributed product that
injured plaintiffs).  It would make no difference that any contracts with in-state companies may
"relate to the same general subject matter"—"courts require a 'tighter connection [to] the elements
of the claim.'"  *Lloyd v. The Retail Equation, Inc.*, 2022 WL 18024208, at *5 (D.N.J. Dec. 29,
2022) (no jurisdiction based on defendant's "clearly relat[ed]" contract with a forum company that
was "not the focal point" of the allegedly unlawful collection of plaintiff's data).

### C.     The Exercise of Jurisdiction Would Be Unreasonable.

Considering the circumstances, the exercise of personal jurisdiction over FullStory would
also not comport with "traditional notions of fair play and substantial justice."  *IMO Indus.*, 155
F.3d at 259; *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 205 (3d Cir. 1998) (citing
factors courts consider).  Defending claims in Pennsylvania would place an undue burden on
FullStory, a privately held company with no presence in Pennsylvania.  The state of Pennsylvania
has no particular interest in regulating a company operating out of Georgia.  Nor is this forum
essential to Plaintiff's interest in convenient and effective relief, because he already has shown the
ability and resources to bring a similar wiretapping case in another state that is more than 2,500
miles away.  *See Perkins v. Zillow Group, Inc.*, No. 2:22-cv-01282 (W.D. Wash. filed Sept. 12,
2022) (asserting claims by Plaintiff Kenneth Hasson).

Accordingly, because the Amended Complaint does not plead facts showing that FullStory
is subject to personal jurisdiction in this forum, this Court should dismiss this lawsuit.

## II.     PLAINTIFF FAILS TO STATE ANY CLAIM.

For the reasons explained above, the Court should dismiss the Amended Complaint for
lack of personal jurisdiction.  But even if the Court were to find that personal jurisdiction attaches

to FullStory, the Amended Complaint should be dismissed for failure to state any viable claim.  A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible only when it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In deciding a Rule 12(b)(6) motion, the Court may consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'"  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).[3]

A.    **The Pennsylvania Wiretap Act Claim Should Be Dismissed.**

To state a claim under the Pennsylvania Wiretap Act, Plaintiff must allege that a defendant (1) "intercepts" his electronic communication (2) without "prior consent."  18 Pa. C.S. §§ 5704(4), 5725(a).  The Amended Complaint fails to plausibly allege either of those elements.

1.    **Plaintiff's Communications Were Not "Intercepted."**

Plaintiff's Amended Complaint fails to satisfy the requirements for stating an unlawful interception claim under the Pennsylvania Wiretap Act.  18 Pa. C.S. § 5725(a).  The Wiretap Act defines "intercept" as "[a]ural or other acquisition of the *contents* of any *wire, electronic or oral communication* through the use of any electronic, mechanical or other *device*."  *Id.* § 5702 (emphases added).  Plaintiff's claim does not satisfy any of the italicized requirements.

a)    **FullStory's Software Is Not a "Device."**

Software code on a website is not a "device" within the meaning of the Wiretap Act.  The Amended Complaint contains a single conclusory allegation that "[t]he FullStory Script is a 'device'."  ECF No. 23 ¶ 106.  The "FullStory Script" is described as "a 'small snippet' of JavaScript code [that] is placed in the code of a client website."  *Id.* ¶ 42.  The Wiretap Act,

---

[3] FullStory is filing a separate Request for Judicial Notice in support of its motion to dismiss.

however, defines a "device" as "[a]ny *device* or *apparatus* . . . that can be used to intercept a wire, electronic or oral communication."  18 Pa. C.S. § 5702 (emphases added).  Interpreting the words of the statute according to "common and approved usage," as required under Pennsylvania law, *Commonwealth v. Hart*, 28 A.3d 898, 908 (Pa. 2011), a "device" or "apparatus" means something tangible; it does not encompass intangible software code.

Although it appears Pennsylvania state courts have not addressed whether software is a "device" under the Wiretap Act, other courts have concluded that the "most natural reading" of the terms "device" and "apparatus" "calls to mind" something physical like "a piece of equipment," not software code.  *See Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 462–63 (D. Md. 2015) (software not a "device" or "apparatus"), *aff'd*, 851 F.3d 315 (4th Cir. 2017).  This natural reading is supported by dictionary definitions, to which courts applying Pennsylvania law routinely refer when interpreting undefined statutory terms.  *See Hart*, 28 A.3d at 909 (common and approved usage of a term "may be ascertained by examining its dictionary definition").  Black's Law Dictionary, for example, defines "device" as "[a] mechanical invention" that may be "an apparatus or an article of manufacture," and directs readers to the term "machine" in the definition of "apparatus."  Black's Law Dictionary (11th ed. 2019) (defining "machine" as "[a] device or apparatus consisting of fixed and moving parts").  A snippet of code on a website is not something physical like a "mechanical invention" or a "machine."

"In defining a statutory term," Pennsylvania courts "strive to determine its meaning at the time the General Assembly enacted the legislation," consulting dictionaries at the time the legislation in question was enacted. *Commonwealth v. Gamby*, 283 A.3d 298, 307 n.11 (Pa. 2022). In 1978, the dictionary definition of the terms "device" and "apparatus" similarly referred to something tangible.  *See* Merriam-Webster Dictionary (1978) (defining "device" as "[a] piece of

- 11 -

equipment or a mechanism for a special purpose" and "apparatus" as "[a] set of materials or equipment for a particular use").  Despite dozens of amendments in the intervening decades, the legislature has not amended the statute to include intangible software code.  This Court should reject Plaintiff's invitation to judicially amend the Wiretap Act by "invest[ing] old statutory terms with new meanings."  *Gamby*, 283 A.3d at 307 n.11.[4]

Consistent with this plain meaning, courts elsewhere have held that session replay and other software is not a "device" or "apparatus" under similar wiretap laws.  *See*, *e.g.*, *Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (dismissing federal wiretap claim because "the word 'device' does not encompass software"); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (dismissing Florida wiretap claim because session replay software is not a "device or apparatus"); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same); *Connor v. Whirlpool Corp.*, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (same); *cf. United States v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) ("software is not a 'device'" in federal Stored Communications Act "under its plain meaning").

This conclusion is also consistent with how Pennsylvania courts have applied these terms in other contexts, holding that *tangible* items qualify as a "device" or "apparatus."  *Commonwealth v. Diego*, 119 A.3d 370, 376 (Pa. Super. 2015) (computer tablet); *Commonwealth v. Smith*, 136 A.3d 170, 178 (Pa. Super. 2016) (smartphone).  In sum, the plain and ordinary meaning of the statutory term "device" does not extend to a snippet of FullStory's software code on Mattress

---

[4] Another court in this District considered, but did not decide, whether software code on a website is a "device or apparatus."  *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 116–17 (W.D. Pa. 2019).  On appeal of that case, the Third Circuit assumed without deciding that software code was a "device," as no party had briefed the issue.  *Popa v. Harriet Carter Gifts, Inc.* ("*Popa II*"), 52 F.4th 121, 131 n.8 (3d Cir. 2022).  *Popa* therefore does not preclude FullStory's argument.

Firm's website.  And even if this Court were to find the term ambiguous, the rule of lenity that applies to the Wiretap Act, as a criminal statute, requires that any such ambiguity be resolved in FullStory's favor.[5]  *Commonwealth v. Lassiter*, 722 A.2d 657, 660 (Pa. 1998) (describing rule); *see Hartford Steam Boiler Inspection v. Int'l Glass Prods., LLC*, 2016 WL 5468111, at \*16 (W.D. Pa. Sep. 29, 2016) (applying rule of lenity to civil application of Pennsylvania criminal statute).

### b)  FullStory Did Not Acquire the "Contents" of Plaintiff's "Electronic Communications."

Plaintiff fails to state an "interception" claim under the Pennsylvania Wiretap Act for the additional reason that the Amended Complaint does not allege collection of the "contents" of any "electronic communications."  18 Pa. C.S. § 5702.  "Contents" is defined in the statute as "any information concerning the substance, purport, or meaning of that communication."  *Id*.  The term is defined identically in the federal Wiretap Act.  18 U.S.C. § 2510.  Generally speaking, the federal Wiretap Act and Pennsylvania Wiretap Act are "interpreted in the same way."  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 n.6 (3d Cir. 2003).  Under the federal analogue, the term "contents" does not include "record information," *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014), such as "addresses, phone numbers, and URLs" when performing a "dialing, routing, addressing, or signaling" function, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015).

For the same reasons, the "mouse movements," "clicks," "URLs of web pages visited," "keystrokes," and "name, address, email address, and payment information" entered into forms,

---

[5] The criminal portion of the Act appears under a different provision, 18 Pa. C.S. § 5703, but it applies the same definition of "intercept" and "device" as its civil counterpart, 18 Pa. C.S. § 5725. 18 Pa. C.S. § 5702 (definitions of words "[a]s used in this chapter").  "[C]onsequently, any ambiguities in the statute should be interpreted strictly and consistently in both the criminal and the civil context."  *Hartford Steam Boiler Inspection*, 2016 WL 5468111, at \*16.

which Plaintiff claims is collected by session replay software, ECF No. 23 ¶¶ 1, 71, 76, do not reflect "the substance, purport, or meaning"—*i.e.*, "contents"—of a communication under the Pennsylvania wiretap statute.  "[The] mere tracking of Plaintiff's movements on [a] website is the cyber analog to record information [a defendant] could have obtained through a security camera at a brick-and-mortar store"; such tracking information "d[oes] not convey the substance of any particular communication."  *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321–22 (S.D. Fla. 2021) (applying same analogy and holding that mouse movements, clicks, pages visited, and keystrokes, including information input by the plaintiff, were not "contents" under Florida wiretap law); *see also Jacome*, 2021 WL 3087860, at *4 (same); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (clicks, pages visited, keystrokes, and shipping and billing information, were not "contents" under California wiretap law).[6]

The Amended Complaint also fails to plead the interception of an "electronic communication," because the Pennsylvania statute expressly excludes "[a]ny communication from a tracking device," defined as "[a]n electronic or mechanical device which permits only the tracking of the movement of a person or object."  18 Pa. C.S. § 5702.  If, and only if, this Court holds that the software code at issue here is a "device" (which it should not do for the reasons explained *supra* at pp. 10–13), then it is an *exempt* "tracking" device.  *See Jacome*, 2021 WL 3087860, at *5  (dismissing Florida wiretap claim against website using session replay software under tracking device exemption); *Goldstein*, 559 F. Supp. 3d at 1321 (same).

_____

[6] Separately, the Amended Complaint's diversion into unproven, hearsay complaints by others against FullStory that have nothing to do with Mattress Firm's website (ECF No. 23 ¶¶ 59–66) should be disregarded as "irrelevant to [Plaintiff's] burden to plead sufficient facts to support his individual claim."  *Schneider v. SunTrust Mortg., Inc.*, 2011 WL 2600720, at *3 n.4 (D. Minn. June 30, 2011) (declining to consider news report about defendant's "history" of purported conduct).

In sum, Plaintiff states no valid "interception" claim under the Pennsylvania Wiretap Act.[7]

Finally, FullStory maintains that as an alleged direct recipient of data collected by its software, no wiretap claim can be maintained against it.  "[W]here a party receives information from a communication as a result of being a direct party to the communication, there is no interception."  *Commonwealth v. Proetto*, 771 A.2d 823, 831 (Pa. Super. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003); *see Commonwealth v. Cruttenden*, 58 A.3d 95, 98 (Pa. 2012) (same); *Diego*, 119 A.3d at 380–81 (same).  Plaintiff alleges that FullStory's software code "sends users' Website Communications to FullStory in real time."  ECF No. 23 ¶ 42.  "By receiving [Plaintiff's] communication directly," both Mattress Firm *and* FullStory "were in fact themselves parties to the [communication]," even if Plaintiff did not know their identities at the time.  *Cruttenden*, 58 A.3d at 130–33 (applying party exception though recipient misrepresented identity).  As a result, "there was no eavesdropping or listening in, and no interception took place."  *Id.* at 133.  FullStory acknowledges that the Third Circuit recently rejected this "direct recipient" argument,[8] and FullStory presents this argument to preserve the issue for appeal.

---

[7] Plaintiff separately alleges in a conclusory manner that FullStory unlawfully "disclose[d] or use[d]" his allegedly intercepted communications.  18 Pa. C.S. § 5725(a); *see* ECF No. 23 ¶ 110. Nowhere does he allege how or where FullStory purportedly "disclose[d] or use[d]" Plaintiff's data.  Moreover, because Plaintiff has not plausibly alleged a predicate unlawful interception of his communications, there can be no derivative liability for disclosing or using any such communications.  18 Pa. C.S. § 5703(2)–(3) (prohibiting the disclosure and use only of "information [that] was obtained through the interception"); *see Walsh v. Krantz*, 386 F. App'x 334, 340 (3d Cir. 2010) (no derivative liability for disclosure or use of communication under federal Wiretap Act where there was no unlawful interception).

[8] *See Popa II*, 52 F.4th at 129 (no direct-party exception to 18 Pa. C.S. § 5725(a) outside the law enforcement context).  *But see Diego*, 119 A.3d at 380–81 (applying direct-party exception even when "no law enforcement officer was a direct party to the communication").

2.      **Plaintiff Consented to the Alleged Data Collection.**

Plaintiff's wiretap claim also fails because he consented to the collection, sharing, and use of his interactions on the Mattress Firm website.  Under the Pennsylvania Wiretap Act, it is not unlawful to intercept a communication "where all parties to the communication have given prior consent to such interception."  18 Pa. C.S. § 5704(4).  As the Third Circuit recognized, "if someone consents to the interception of her communications with a website, the [Act] does not impose liability."  *Popa II*, 52 F.4th at 132.  Here, FullStory and Mattress Firm undisputedly consented. And Plaintiff also consented to Mattress Firm's terms of use which were disclosed to him.

"'[P]rior consent' can be demonstrated when the person being recorded 'knew *or should have known* that the conversation was being recorded.'"  *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (emphasis added).  Consent does not require "actual knowledge that he or she is being recorded," and implied consent alone will defeat a Pennsylvania Wiretap Act claim.  *See id.* at 319.  The standard is "one of a reasonable person" under the circumstances.  *Id.*  For example, the Pennsylvania Supreme Court held in *Byrd* that a prisoner "consent[ed] by conduct" when he communicated with a visitor over a telephone after receiving a message that his communication "may be monitored or recorded."  *Id.* at 320.  It did not matter that the prisoner received but "may not have heard" the warning, because a "reasonably intelligent person" in such circumstances would know he or she is being recorded.  *Id.* at 316, 320.

This case is no different in kind than *Byrd*.  When Plaintiff visited Mattress Firm's website, he was immediately presented with a pop-up banner stating, "This website uses cookies to ensure you get the best experience.  To consent to these cookies, please continue shopping."  RJN Ex. 1 at 1; *see id.* Ex. 2 at 1.  As the Third Circuit explained, "[c]ookies allow a website to 'remember' information about a user's browsing activities," *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268 (3d Cir. 2016), including the user's "movements throughout the . . . Web site," *In re*

*DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 504 (S.D.N.Y. 2001).  The pop-up banner, then, is the Internet equivalent of the notification in *Byrd* that communications may be recorded. In such circumstances, a reasonable website visitor who continued shopping, as Plaintiff alleges here (ECF No. 23 ¶ 70), would or should have known that interactions with the website will be collected.  *See Jacome*, 2021 WL 3087860, at *7 (dismissing Florida wiretap claim against website using session replay software under similar consent exception where a pop-up warned that "by continuing to use the Website, Plaintiff acknowledges the use of cookies").

In addition, Mattress Firm's online privacy policy at the time Plaintiff filed his lawsuit informed visitors to its website about the collection, use, and sharing of their data.  The gravamen of the Complaint is that, when Plaintiff went on Mattress Firm's website, his movements were "captured" by "the FullStory Script" and "sent[] . . . to FullStory."  ECF No. 23 ¶ 42, 71.  However, Mattress Firm's privacy policy—which is linked or directly referenced in the aforementioned pop-up banner, and further linked on every page of its website and not just "on the homepage" (ECF No. 23 ¶ 86)—expressly disclosed that Mattress Firm may (i) "use tracking tools like clickstream data, cookies and pixel tags," (ii) collect "information regarding your interaction with an Internet Web site," "[n]ame," "[p]ostal [a]ddress, "[e]mail [a]ddress," and "[p]ayment [i]nformation," and (iii) share this information with third-party vendors "[t]o enable [those] vendors to perform operational services on [Mattress Firm's] behalf."  RJN Ex. 3 at 2–3, 5–6; *id.* Ex. 4 at 2–3, 5–6. Any visitor to Mattress Firm's website was therefore on notice of the alleged data collection at issue.

Even apart from Mattress Firm's pop-up banner and privacy policy, Pennsylvania courts have held that a reasonable person's knowledge that he or she is being recorded may be "surmised from the very nature of the selected means of transmission." *Diego*, 119 A.3d 370, 377.  One such

means of transmission is the Internet.  "Any reasonably intelligent person, savvy enough to be using the Internet" knows that such communications "are received in a recorded format, by their very nature." *Proetto*, 771 A.2d at 829 (applying consent exception to email communications). As the Third Circuit has recognized, "[m]ost of us understand that what we do on the Internet is not completely private," and that "our data has to be going somewhere"—"feeding an entire system of trackers, cookies, and algorithms." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 266. "By the very act of sending a communication over the Internet," "the party," including Plaintiff here, "expressly consents to the recording of the message." *Proetto*, 771 A.2d at 829.

In sum, when taking into account Mattress Firm's pop-up banner and privacy policy, and the nature of Internet communications generally, Plaintiff consented to Mattress Firm's alleged activity under the controlling standard in *Byrd* because he "should have known . . . that the conversation was being recorded."  235 A.3d at 319.  Whether Plaintiff actually read Mattress Firm's multiple disclosures makes no difference.  As the Third Circuit recently made clear, "[t]hough [the plaintiff] claims she never saw the policy, the Pennsylvania Supreme Court has said that 'prior consent' . . . does not require 'actual knowledge.'" *Popa II*, 52 F.4th at 132.

## B.    The Intrusion Upon Seclusion Claim Should Be Dismissed.

Plaintiff also does not state a claim for common-law intrusion upon seclusion.[9]  Plaintiff's claim should be dismissed because he does not (and cannot) allege the requisite elements of (1) an intentional intrusion, (2) upon the solitude or seclusion of another, (3) in a manner that would be

---

[9] While Plaintiff alleges that a right to privacy is "also embodied in . . . the Pennsylvania constitution" (ECF No. 23 ¶ 114), that right "does not encompass invasions of privacy committed by *private actors*." *Brooks Grp. & Assocs., Inc. v. LeVigne*, 2014 WL 1490529, at *11 & n.72 (E.D. Pa. Apr. 15, 2014) (emphasis added).

"highly offensive" to a reasonable person. *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 260 (3d Cir. 2004) (quoting *Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. 1984)).

*First*, the Amended Complaint does not support an inference that FullStory *intended* an intrusion upon Plaintiff. A defendant commits an intentional intrusion "only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989) (applying Pennsylvania law). Plaintiff fails to allege such facts. *See Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 405 (E.D. Pa. 2011) (dismissing claim for failure to allege such knowledge). The only reasonable inference is that FullStory *had* permission to collect Plaintiff's data, or at least held a reasonable belief that it did, because Mattress Firm's privacy policy and pop-up banner disclosed the activity that Plaintiff challenges (*supra* at pp. 16–18). Indeed, Mattress Firm's privacy policy stated that it is "legally . . . permitted" to share website user information "[t]o enable vendors to perform operational services on our behalf." RJN Ex. 3 at 5–6; *id.* Ex. 4 at 5–6. As a service provider for Mattress Firm, FullStory is entitled to rely on Mattress Firm's representations to users of its website.

*Second*, Plaintiff had no "reasonable expectation of privacy" over his alleged mouse clicks and keystrokes. *Kline*, 386 F.3d at 260. Plaintiff cannot claim that he had a reasonable expectation of privacy over information he voluntarily provided to Mattress Firm and its service providers like FullStory. *See Saleh*, 562 F. Supp. 3d at 525 (no reasonable expectation of privacy over data provided to website operator and FullStory). Because Mattress Firm's privacy policy disclosed to Plaintiff that "information regarding your interaction with an Internet Web site" may be collected and shared with third-party vendors (RJN Ex. 3 at 6; *id.* Ex. 4 at 6), Plaintiff's asserted expectation of privacy is "not objectively reasonable." *United States v. Bowers*, 2021 WL 2882438, at *3

(W.D. Pa. July 8, 2021) (no reasonable expectation of privacy in information "when a person is forewarned of the possible disclosure of [the] information").

*Third*, the alleged collection and sharing of Plaintiff's movements on the website could not be considered highly offensive to a reasonable person. A "highly offensive" intrusion is one that "would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 248 (Pa. 2002). Plaintiff's allegations fail to meet this "stringent standard." *Boring v. Google, Inc.*, 598 F. Supp. 2d 695, 700 (W.D. Pa. 2009), *rev'd in part on other grounds*, 362 F. App'x 273 (3d Cir. 2010). Courts have dismissed claims alleging far more intrusive conduct. *See, e.g.*, *Chicarella v. Passant*, 494 A.2d 1109, 1113–14 (Pa. Super. 1985) (defendant's investigators "utilized a pretext" to obtain plaintiff's personal medical records); *Nagy v. Bell Tel. Co. of Pa.*, 436 A.2d 701, 704 (Pa. Super. 1981) (defendant "deliberately persuaded" phone company to disclose phone numbers plaintiff dialed).

Indeed, another court in this District held that "[t]he act of collecting [a plaintiff's] keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach." *Popa*, 426 F. Supp. 3d at 122–23 (dismissing an intrusion upon seclusion claim).

For the foregoing reasons, Plaintiff's common law privacy claim fails.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Amended Complaint with prejudice. *See, e.g.*, *Kennedy v. Help at Home, LLC*, 731 F. App'x 105, 108 (3d Cir. 2018) ("Because [plaintiff] has not identified an adequate basis for exercising personal jurisdiction over Help at Home, dismissal with prejudice was proper."); *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 217 (3d Cir. 2013) (dismissal with prejudice warranted where "any amendment would be futile").

Dated:  January 23, 2023                              Respectfully Submitted:


                                                      /s/ *Stephen F. Raiola*

                                                      Peter St. Tienne Wolff (PA. I.D. No. 208433)
                                                      psw@pietragallo.com
                                                      Stephen F. Raiola (PA. I.D. No. 329983)
                                                      sfr@pietragallo.com
                                                      PIETRAGALLO GORDON ALFANO
                                                      BOSICK & RASPANTI LLP
                                                      One Oxford Centre, 38th Floor
                                                      Pittsburgh, PA 15219
                                                      Telephone: (412) 263-4352
                                                      Facsimile: (412) 263-4252

                                                      Emily Johnson Henn (*pro hac vice*)
                                                      ehenn@cov.com
                                                      Matthew Q. Verdin (*pro hac vice*)
                                                      mverdin@cov.com
                                                      COVINGTON & BURLING LLP
                                                      3000 El Camino Real
                                                      5 Palo Alto Square, 10th Floor
                                                      Palo Alto, CA 94306-2112
                                                      Telephone: (650) 632-4700
                                                      Facsimile: (650) 632-4800

                                                      Eric Bosset (*pro hac vice*)
                                                      ebosset@cov.com
                                                      COVINGTON & BURLING LLP
                                                      One CityCenter
                                                      850 Tenth Street, NW
                                                      Washington, DC 20001
                                                      Telephone: (202) 662-6000
                                                      Facsimile: (202) 778-5606

                                                      *Counsel for Defendant*
                                                      *FullStory, Inc.*